## GREEN v. CROSS.

A mortgager in possession conveyed one parcel of the mortgaged premises; the mortgagee, after condition broken, entered under process upon that part of the mortgaged premises, which remained in possession of the mortgager, and held possession to foreclose for one year; the part so held was equal in value at the time of the foreclosure to the mortgage debt. *Held:*—

That the mortgage was foreclosed on that part of the premises, of which the mortgagee so took and retained possession, though nothing was done to foreclose on the part held under the conveyance from the mortgager:

That, inasmuch as the part of the premises, on which the mortgage was foreclosed, was equal in value to the mortgage debt, the debt was thereby paid and the mortgage discharged :

That the defendant, holding under the conveyance from the mortgager, might set up the discharge of the mortgage by the foreclosure in defence to a writ of entry by the mortgagee:

That, no other means having been taken to ascertain the value of the land, the value might be proved on trial under the plea of *nul disseizin.*

WRIT OF ENTRY for land in Berlin.   Plea, *nul disseizin.*

On trial the following facts appeared :

William Y. Merrill, on the 12th of August, 1852, conveyed several tracts of land in Berlin, including the demanded premises, to William A. Wilson and Charles W. Gower, and took back from them a mortgage of the premises to secure payment of several promissory notes signed by them and payable to him or order.

On the first of February, 1853, Wilson and Gower bought of the plaintiff several tracts of land in Berlin and Milan, and gave him a mortgage on these lands and also on the land purchased of Merrill to secure payment of five thousand dollars according to their notes of that date, payable to the plaintiff.

On the 25th of December, 1854, Wilson and Gower, by warranty deed of that date, recorded January 26th, 1855, conveyed the demanded premises to O. H. Mason, and, on the 26th of August, 1857, Mason, by warranty deed of that date, recorded May 3d, 1858, conveyed the same premises to the defendant.

Previous to May 1857, the mortgage to Merrill and one of the notes came by assignment to Jacob Benton, who brought a writ of entry against Wilson and Gower to foreclose the mortgage returnable to May Term in 1857, and, at November Term, 1857, recovered a conditional judgment for $1097.32, debt and costs, on which a writ of possession issued and seizin was delivered to him on the 30th of January, 1858.   Possession was retained by him and his assignees of part of the mortgaged premises, sufficient in value to pay the debt and costs on the Merrill mortgage, for more than one year ; but possession was not so retained, for that time, of the demanded premises.

Green, the plaintiff, having brought a suit against Wilson & Gower to foreclose their mortgage to him, recovered a conditional judgment, and seizin on his writ of possession was delivered to him of the various tracts covered by his mortgage on the 5th and 6th days of August, 1858. For the purposes of this case, it was agreed that Green had and retain-

ed possession of a large part of those lands for more than a year after the delivery of seizin in such way, so far as possession was concerned, as to constitute a valid foreclosure of the Green mortgage on the lands so held, and that the same lands at the time of the foreclosure were of sufficient value to satisfy and discharge the whole amount of the Green and Merrill mortgages ; and it was also agreed, for the like purpose, that the Green mortgage was not foreclosed in respect to the demanded premises.

The plaintiff objected to the foreclosure of the Merrill mortgage, because in the writ of entry by Benton there was no description of the demanded premises except by reference to the deeds by which Merrill conveyed the land to Wilson and Gower ; and because there was no service on Gower, and there appeared to be no special order on the record or docket for a publication in the Coos *Republican,* in which paper the only notice was published.

The defendant contended that the plaintiff was estopped to set up his title against the defendant by standing by and witnessing the erection of permanent and valuable buildings by the defendant and Mason, his grantor, without disclosing his title or objecting to such erections and improvements, and offered to prove that he supposed he received and had an unincumbered title to the land, and that Green at the time of such erections was aware that such was his claim and understanding.

The plaintiff contended that the defendant was chargeable with notice of the mortgage title, because the mortgage deed referred to other deeds on record, which, if examined, would have shown that the mortgage covered the demanded premises.

A short time before the year expired for redeeming the Merrill mortgage, the plaintiff Green called on Mr. Benton for the purpose of paying off that mortgage, and, having the money with him, produced it and offered to do so, supposing the mortgage was still held by Benton, and he was then informed by him that it had been assigned ; but he declined to inform him to whom. Green then made reasonable inquiries to ascertain to whom the mortgage had been assigned, but was unable to do so until after the expiration of the year from the time of Benton's entering to foreclose ; the assignment, though made on the 8th of July, 1858, not having been recorded till February 9th, 1859 ; and, upon eventually learning to whom the assignment was made, Green opened negotiations with Hinkley, Egery and Smith, the assignees, which terminated in an arrangement made on the 2d day of September, 1859, after the foreclosure of the Green mortgage had been perfected, by which Green paid to Hinkley, Egery and Smith the amount of the Merrill mortgage and interest, costs and expenses, being $1423.50, and received from them their receipt or release under their hands and seals, duly witnessed and acknowledged in the following form :

"Received of Daniel Green of Berlin, N. H. fourteen hundred twenty-three dollars and fifty cents, in full, for the amount due us on a certain note and mortgage given by Wm. A. Wilson and Charles W. Gower to Wm. Y. Merrill, dated August 12th, 1852, assigned to us by

Jacob Benton, by his deed dated July 8, 1858, recorded in the registry of deeds for the county of Coos, N. H., book 63, pages 46 and 47, to which reference is here made, and for cash and interest paid by us for taxes on the mortgaged property; and all rights, claim and interest we had and have by virtue of said assignment of said mortgage to us upon the real estate described therein is hereby discharged. This instrument is not to impair or affect our claim on any of the property by virtue of any other conveyance to us.

Witness our hands and seals, Sept. 2d, 1859."

Upon proof of these facts, the cause was taken from the jury by agreement of the parties, for the purpose of having the questions of law settled; and judgment is to be rendered according to the opinion of the court on this case, unless one of the parties shall elect to try the questions of fact by the jury, in which event the case is to be discharged for that purpose.

*Burns* and *Fletcher*, for plaintiff.

*Ray*, for defendant.

PERLEY, C. J. The demandant claims title under two mortgages, both made by William A. Wilson and Charles W. Gower—one, on the 12th of August, 1852, to William Y. Merrill, the other, on the first of February, 1853, to the plaintiff himself. The defendant claims under a conveyance in fee from Wilson and Gower to O. H. Mason, dated December 25th, 1854, and a like conveyance from Mason to himself, dated August 26th, 1857. These mortgages covered the demanded premises and also other lands, and the defendant does not deny that the mortgages were once a valid incumbrance on the land occupied by him; but he takes the ground that there has been a foreclosure on part of the land mortgaged, not claimed by him, of sufficient value at the time of the foreclosure to pay all that was then due on both the mortgages, and that thereby the mortgage debts are paid and the mortgages discharged. The plaintiff claims as mortgagee in one mortgage, and, as assignee of the other mortgage, and insists that there has been no foreclosure on any part of the mortgaged premises; and, it being found by the case that the land, taken possession of and held under the mortgage and under legal process by the plaintiff for the purpose of foreclosure, was of equal value to the whole of the mortgage debts, the main question would seem to be, whether there was a foreclosure on that part of the mortgaged premises which was thus taken and held under the mortgages after condition broken. For it is well settled in this State and elsewhere in this country, that, in case the mortgagee forecloses and retains title to the land on which he has foreclosed, the land is applied in payment of the debt.

If the mortgagee takes no other measures to fix the value of the land, it may be shown on trial of a suit brought to enforce payment of the mortgage debt, and if the land is found to be of equal value to the debt, the mortgage is discharged and the suit cannot be maintained. *Hunt* v.

*Stiles*, 10 N. H. 466; *Smith* v. *Packard*, 19 N. H. 575; *Cross* v. *Gannett*, 39 N. H. 140; *Amory* v. *Fairbanks*, 3 Mass. 562; *West* v. *Chamberlin*, 8 Pick. 338; *Hatch* v. *White*, 2 Gallison, 152; *Insurance Company* v. *Lansing*, 5 Cowen, 380; *Spencer* v. *Harford*, 4 Wend. 381; *Lowell* v. *Leland*, 3 Vermont, 581; *Bassett* v. *Mason*, 18 Conn. 131; Powell on Mortgages, 1002 and 1003, Rand's Notes.

Is there a foreclosure of the mortgage to Merrill, which had come by assignment to Mr. Benton? Mr. Benton entered to foreclose on the 30th of January, 1858, and possession of part was retained by him and his assignee for more than one year from the time of his entry. Waiving, for the present, the objection that possession was not retained of all the mortgaged premises, and the objections raised to the process under which he entered, and taking it for granted that the foreclosure was complete at the end of the year on the part, of which possession was retained for that time, the foreclosure was opened on the second of September, 1859, by the receipt of the mortgage debt. The transaction, as shown by the instrument of that date, was in terms a payment and discharge of the mortgage and will so operate, unless the equity of the case requires that the mortgage and foreclosure should be kept on foot for the purpose of enabling the subsequent incumbrancer to assert his claim on the mortgaged premises for payment of the money he was obliged to advance for protection of his own subsequent security. Whether there is any such equity in this case may be considered hereafter. It may be important for the defendant to maintain that there is no foreclosure of this mortgage; because, if there is, all the land, upon which the foreclosure attaches will go on that mortgage, and no surplus of value can be applied toward redemption of the subsequent mortgage. *Hedge* v. *Holmes*, 10 Pick. 330. If the mortgagee, after foreclosure, receives the mortgage debt, the foreclosure is waived. *Batchelder* v. *Robinson*, 6 N. H. 12; *Deming* v. *Comings*, 11 N. H. 474; *Gould* v. *White*, 26 N. H. 178.

There are other grounds upon which it might be contended that this prior mortgage was not foreclosed. The process, under which the entry was made, issued in a suit brought by Mr. Benton, and the plaintiff might reasonably suppose, until he had some information to the contrary, that Mr. Benton was the owner of the mortgage. The plaintiff, being a subsequent mortgagee and having the right to redeem, went to Mr. Benton before the year expired and offered to redeem. He then learned that the mortgage had been assigned, but Mr. Benton declined to inform him who the assignee was. The assignment was by deed duly executed and acknowledged, but the assignee kept the deed from the records until after the year expired. From these facts a jury would be at liberty to infer that there was an understanding between the assignor and assignee that the assignee should not be known to the plaintiff until it was too late for him to redeem. If that were found by a jury and that the plaintiff was prevented from redeeming by this collusion, the assignee would not be allowed to take advantage of a foreclosure obtained by such means.

*Deming* v. *Comings,* 11 N. H. 474; *Noyes* v. *Clark,* 7 Paige, 179.

Then, again, the grantor of the defendant was in the demanded premises under the warranty deed of Wilson & Gower at the time when Benton's suit was brought against them. Wilson and Gower had no interest in the land then held by Mason, and no judgment in that suit against Wilson and Gower could have any legal effect on his right, or on the rights of the defendant, his grantee. If the suit had been properly instituted against Wilson and Gower, while they were tenants of the land, and Mason or the defendant had come in pending the suit, the case would have been different. But I have a strong opinion, that, when the statute speaks of an entry under process of law, it must mean process against the party to the judgment, and against the party, who was in claiming title to the land when the suit was brought; and I do not understand that this execution, issued on a judgment against Wilson and Gower, could be lawfully used to turn the defendant out of possession, who was in by conveyance from a party that was in possession claiming an absolute title in fee simple, when the suit was instituted. The mortgagee, by entering under such an execution, might be estopped to deny that it was legal process for the purpose of foreclosure; but I cannot think it would have any effect against a party coming to redeem. It is not perhaps necessary to pursue the discussion of these points further, it being clear on the other point that receiving payment of the debt opened the foreclosure.

It remains to consider the effect of the proceedings for the foreclosure of the mortgage to Green, the plaintiff. The case finds that the plaintiff brought a suit against Wilson and Gower to foreclose this mortgage, obtained a conditional judgment, took out a writ of possession, and entered under it into the land mortgaged, and retained possession of a large part of it for more than one year, in such way as to constitute a valid foreclosure on the part, of which possession was so retained; but that he did not retain such possession of the demanded premises, which had been sold by the mortgagers to Mason and by him to the defendant.

This, then, is the general statement of the case on this point: the mortgagers had sold part of the mortgaged premises; the purchaser had entered, and the defendant was in possession under a conveyance from him when the plaintiff's execution was served and when the plaintiff took possession; the plaintiff withdrew from his possession of the demanded premises, but continued his possession of the parts not sold by the mortgagers in such way as to foreclose on those parts, provided the law will allow him to waive his right of foreclosure on the part sold and enforce his claim on the residue. If he forecloses on the part which he has thus held for one year,—that part being of sufficient value to pay all the mortgage debts,—he has all the mortgages were intended to give him, which was security for the mortgage debts, and all that his contract of indemnity requires; and there is no equity which calls on the court to set aside his proceedings for foreclosure, provided the law will allow him to take security and enforce payment of his debt by a foreclosure on part of the mortgaged premises in this way. The mortgagee, therefore, has

no reason to complain that injustice has been done him, if this foreclosure should be upheld.

Nor can the mortgagers complain because the whole debt would be thrown on the part of the mortgaged premises which is retained by them; for that is precisely where, on a final liquidation among all parties interested, equity will cast and leave the burden. Where the mortgager has sold parts of the land mortgaged, the rule of equity is that the debt shall be ultimately paid out of the land not sold, as far as it will go; and, if the mortgager has made successive sales of different parts, the mortgage debt will be thrown first on the parts last sold. *Brown* v. *Simonds,* 44 N. H. 475; Powell on Mortgages, 1014; *Lanoy* v. *The Duchess of Athol,* 2 Atk. 446; *Delabigarre* v. *Bush,* 2 Johns. 490; *Life Ins. & Trust Co.* v. *Milnor,* 1 Barb. Ch. 353; *Cushing* v. *Ayer,* 25 Maine, 383.

We are not able to see any injustice or any inconvenience to any party in allowing a foreclosure on part of the mortgaged premises in a case like this. On the other hand, it might be a great hardship on the purchaser of part, if the mortgagee having entered on the residue, which was retained by the mortgager, and held it, under color of a procedure to foreclose, for the time limited by law, should be permitted years after to set all that he had done aside and call on the owner of a small part to pay the whole of an accumulated debt, or lose his land. Unless, therefore, we are met by some unbending rule of law, which forbids it, this foreclosure ought to be upheld.

If we look to the general principles which govern the redemption and foreclosure of mortgages in England, where the foreclosure is always by bill in equity, and in other jurisdictions where that method has been adopted, I find nothing in them against a foreclosure on part only of the mortgaged premises in a case like this. On the contrary, if part of the land has been sold by the mortgager and what remains in his hands is a sufficient security, the mortgagee is commended, who relies in his bill to foreclose on the land that is unsold, and omits the purchaser as a party to his bill.

Thus, in *Hosford* v. *Nichols,* 1 Paige, 220, 224, Walworth, Chancellor, says: "Neither was it necessary to make all the owners of the land covered by the mortgage parties to the suit. It is stated in the bill and admitted in the answers that the 150 acres remaining unsold are amply sufficient to satisfy the mortgage debt. No question of contribution can arise, as, by the settled law of the court, that part of the premises must be first applied to satisfy the mortgage. If the complainant chooses to rely upon that security alone, it does not lie with the defendants to object that she has omitted to increase the costs against them by unnecessarily making the owners of the other parts of the lot parties to the suit." This case of *Hosford* v. *Nichols* would seem to be very exactly in point to show that there might be a foreclosure by bill in equity on the part of these mortgaged premises retained by Wilson and Gower without foreclosing on the part which they had sold.

There are numerous other authorities which go to show, that, as a general rule, without regard to the different methods of foreclosing adopt-

ed in different jurisdictions, there may be a foreclosure on part of the mortgaged premises without foreclosing on all, if the mortgagee so elect. In *Dexter* v. *Arnold*, 1 Sumner, 109, 118, the mortgage covered two separate tracts, and one parcel had been held under the mortgage title more than twenty years. Story, J., says, "it may be suggested that there cannot be any redemption of a mortgage unless of all the premises contained in the original mortgage deed, and, therefore, if there be a bar to any part, that operates as a bar to the whole. Our opinion is that this objection, if it should be made, is not maintained in law. There is neither reason nor policy to support it; and we are not aware of any case which goes the length of establishing it. It seems to us that the authorities, so far as they go, point the other way"; and he cites Coventry's note to Powell on Mortgages, 385, to which we may refer hereafter. So, in his Equity Pl. sec. 197, p. 182, Story says, "if he" (the mortgager,) "has assigned the equity in the different estates mortgaged to several persons they must all be brought before the court as parties, if the foreclosure is sought against all the estates." In *Green* v. *Dixon,* 9 Wisconsin, 532, it was held, that, where two lots are covered by the same mortgage, a decree of foreclosure may be good as to one lot and not as to the other, if the lots have been conveyed by the mortgager to different purchasers. And where the court orders a sale, instead of decreeing a strict foreclosure on the land, which would seem to be the more usual course in New York, the land, if capable of it, is sold in parcels; the parts that may be retained by the mortgager are sold first; when enough is sold to pay the debt the sale stops; and the owner of the equity may at any stage of the proceedings for a sale redeem the part that remains unsold by paying the balance of the debt. *Delabigarre* v. *Bush*, 2 Johns. 490; *Rathbone* v. *Clark*, 9 Paige, 648. From which it would appear, that, where a court of equity directs the application of mortgaged property to the payment of the mortgage debt upon principles of equity and general convenience, the mortgagee is not only allowed, but required, to apply the property, where it can be done, in parcels, and according to the order in which equity would distribute the burden among all parties interested on a final liquidation. *N. Y. Life Ins. & Trust Co.* v. *Milnor*, 1 Barb. Ch. 353; *Warren* v. *Boynton*, 2 Barb. 13.

Whether, in this State, there can be a foreclosure of a mortgage by any method substantially different from that which is provided by statute, it is not necessary now to inquire; because that method was pursued in this case. Is there anything, then, in that method to prevent a mortgagee, in a case like this, from foreclosing on part of the mortgaged premises, if he so elects, without foreclosing on the residue?

The mortgagee, after condition broken, has a right to the possession of the mortgaged premises; and if possession is denied him he may enforce the right by a writ of entry. One year's possession held according to the statute completes the foreclosure; and there can be no foreclosure under the statute without such possession. The statute, which provides for a conditional judgment when the title of the demandant is by mortgage, recognizes the practice of enforcing a foreclosure by writ of entry.

When the mortgage covers more than one tract of land, the mortgagee in his writ of entry may demand all the tracts that lie in the same county and are in possession of the same tenant, or any one or more of them, and omit the rest. If part of the land is omitted, the defendant can make no legal defence even if he were in possession of all the tracts; and if the tracts are in the possession and seizin of different occupants they cannot be joined in the same writ of entry. *Carll* v. *Butman*, 7 Greenl. 102; *Varnum* v. *Abbot*, 12 Mass. 474; *Fosdick* v. *Gooding*, 1 Greenl. 50.

The writ of entry, when used for the purpose of enforcing a foreclosure, is, for the most part, governed by the same rules of pleading and practice as when the title of the demandant is absolute. I am not aware of any defence that can be made to a writ of entry on a mortgage title, which would not be equally available where the title of the demandant is absolute. The difference is, that, when the title of the demandant appears to be that of a mortgagee, the judgment is conditional that execution for possession shall not issue if the liquidated amount of the mortgage debt and costs is paid within two months.

When the judgment is for part of the mortgaged premises, the demandant may take possession under his execution and hold the part recovered; and if judgment is recovered for all the parcels, and execution issues for possession of them all, the demandant may take possession and hold under his execution such of the parcels as he chooses, and cannot be compelled to enter on the rest. So far, therefore, as the rights and convenience of the mortgager are concerned, there would seem to be no difficulty under the statute in allowing a foreclosure on part only of the mortgaged premises.

On the contrary, we think that mortgagees, who should undertake to foreclose by the methods provided by the statute, might find themselves much embarrassed in many cases, if they could not foreclose on part of the mortgaged premises without foreclosing on the whole. Foreclosure by the statute is by possession continued for that purpose one year; the foreclosure is complete at the termination of the year. If the mortgagee cannot foreclose on part only of the mortgaged premises his foreclosure on all the parts must be simultaneous. If the foreclosure takes place at all it must take place at the termination of the year; and where there are several parcels of the land, in order that the foreclosure should take effect on all at the same time, possession must be taken of all at the same time; which in some cases would be impossible, and in many cases quite inconvenient. Where there are several tenants holding separate parcels of the land under different titles, separate writs of entry must be brought for the recovery of the land. In one case judgment might be promptly recovered on default, and long delayed in another by an obstinate defence. The different parcels of land might lie in different counties; and numerous cases may be easily supposed, in which the mortgagee would find himself in difficulty if he were required to foreclose on all the mortgaged premises at the same time.

Then, on the other hand, as it regards the interests of the party who has a right to redeem; we are at a loss to see how he could be injured

by allowing a foreclosure on part only of the mortgaged premises. If he is in possession of all the land, and proposes to redeem within the year, he certainly will not be the less able to do it because part of the land is left in his possession ; and if he is in possession of one parcel only he has the right to redeem by paying the whole debt and to hold all the land until others contribute their equitable proportion ; and this he can do as well and conveniently when the mortgagee takes possession of part only as when he takes possession of all the mortgaged premises. *Salem* v. *Edgerly*, 33 N. H. 46. If he wishes to redeem, therefore, within the year, whether he occupies part of the land or the whole, it is not easy to see how it can be of any advantage to him for the convenience of redeeming or of obtaining contribution, that possession should be taken of all the land instead of a part ; and he has this advantage that he may, if he choose, allow a foreclosure to be completed on part of the land, have the value of that part, as the law is held here, applied to pay or reduce the mortgage, and redeem the residue of the land by paying the balance of the debt.

Nor can we perceive, in the form of proceeding for foreclosure under our statute, any technical difficulty in foreclosing on part only of the land mortgaged. The mortgagee has the right to enter on the whole or any part of the mortgaged premises ; he may bring his writ of entry to enforce his mortgage for the whole or any part of the land, and he may enter under his judgment and execution into such parts of the land recovered as he may choose, and may hold to foreclose such parts as he may elect, and possession for one year forecloses the right to redeem. Even if, by the rules which prevail where foreclosure is by bill, there could be no partial foreclosure of the mortgaged premises, the form of proceeding under our statute would seem to lead necessarily to the conclusion that such a foreclosure must be allowed here ; because foreclosure under the statute is by one year's possession held for that purpose, and by that method only ; and the mortgagee has the right to take and hold such parts of the mortgaged premises as he may elect, and cannot be compelled to take possession of the residue ; and this right may be enforced by the writ of entry, the remedy recognized by the statute and in general use.

We come, therefore, to the conclusion that there was a valid foreclosure of the plaintiff's mortgage on the part of the mortgaged premises of which he held possession for one year, though there was no foreclosure on the part occupied by the defendant.

We mean, of course, to decide here no more than the precise point raised on this part of the case, which is this ; that when the mortgagers have sold part of the mortgaged premises, but retain enough to secure and pay the mortgage debt, the mortgagee, under our statute, may foreclose on the part retained by the mortgagers, and omit the part which they have sold ; and none of the foregoing remarks are intended to have a broader application.

A single authority, *Spring* v. *Haines*, 21 Maine, 126, has been cited for the plaintiff in support of his position, that there was no foreclosure of his mortgage because all the mortgaged premises were not taken and

held in the proceedings for foreclosure. That case was a bill in equity to redeem. The mortgagee had entered to foreclose at different times on different parcels of the mortgaged premises and held possession of the respective parcels for the time prescribed by the laws of Maine, and, after the lapse of that time, had sold several of the parcels; but it appeared that the sums received for the land sold and the profits were not enough to pay the whole mortgage debt. The plaintiff asked to redeem the land, of which the mortgagee had not taken possession, by paying the balance of the debt after applying the value of the land alleged to be foreclosed. The court held that this could not be done, and laid down the general doctrine that the mortgager had no right to have a part of the mortgaged premises under any circumstances estimated in payment of his debt with a view to the redemption of the residue; and also that a foreclosure cannot take place as to one part of the mortgaged premises and not as to the residue.

It will be seen, that, on the facts, the present case is distinguishable from that in several particulars. There the parcels of land, on which there had been an attempted foreclosure, were not equal in value to the mortgage debt; here the case finds that they were. In that case, the plaintiff came to redeem; in this he comes to enforce payment of his debt. That case was put both by the counsel for the defendant and by the court, partly, at least, on a distinction between the case where the mortgager comes to redeem and the case where the mortgagee sues to enforce payment of his debt. The court says in reference to the authorities cited by the plaintiff: "The cases, which he cites are dissimilar to the one here presented. They are cases in which creditors were seeking to recover their debts secured by the mortgage. In such cases, if the mortgage had been foreclosed, the creditors were holden to account for the value thereof towards payment of their debts." The distinction here taken would seem to admit, that, if the mortgagee were seeking to enforce payment of his debt, the mortgager might have the value of that part of the land of which possession had been taken and held to foreclose, applied on the debt. But, in the conclusion of his judgment, the learned Chief Justice, apparently rejecting this distinction, takes broader ground and says: "Besides, the plaintiff is mistaken in supposing that a foreclosure may take place as to one part of the mortgaged premises and not as to the residue. If he has a right to redeem any part of the mortgaged premises, he has a right to redeem the whole. So long as the mortgager is suffered to remain in possession of any part of the mortgaged premises, his right of redemption to the whole will continue. A different doctrine would be attended with perplexities to which the mortgager is not to be subjected. While the mortgagee might have possession of part of the mortgaged premises nearly equivalent in value and income to his debt and interest, the mortgager might well remain quiet, he being left in possession and enjoyment of the residue. If the mortgagee should subsequently, before his right of entry was gone, enter upon the residue, the mortgager could not redeem without paying the whole debt, and if there was a foreclosure, as supposed in this case, as to a part, he must pay the whole debt in order to redeem the residue, and, at the same

time, lose the part, as to which there would have been a foreclosure. The law would not sanction such an iniquitous procedure. The plaintiff's bill must therefore be dismissed. The conclusion to which we have arrived is fully supported by Cruise, Title Mortgage XV., Ch. III., secs. 66 and 67."

As it respects this reasoning from inconvenience, it is to be observed that it does not apply at all to a case like the present, where the value of the parts foreclosed equals the debt and pays it all; and then again all the inconvenience suggested in other circumstances arises from the assumption that when the mortgager comes to redeem, the value of the parts foreclosed will not be applied towards the debt; which, however it may be in Maine, is not understood to be the law of this State.

As it respects the single authority cited by the court, in *Spring* v. *Haines,* for the general doctrine, that there can be no foreclosure on part only of the land mortgaged, even supposing it to be good law, instead of fully supporting the conclusion of the court, if it can be said to support it at all, it at best does no more than supply a remote analogy. In several editions of Cruise, which I have examined, sections 66 and 67 of Chapter III., referred to, have no relation to this question, and in those editions I find nothing in that chapter, or elsewhere in Cruise, that can be supposed to have been intended, except sections 84 and 85 in that chapter. The general subject under discussion in that part of the chapter is the effect of possession by the mortgagee on the right to redeem. Twenty years unexplained possession by the mortgager bars the right of the mortgagee to the land upon a presumption that the mortgage debt has been discharged. So twenty years unexplained possession by the mortgagee bars the right to redeem upon the presumption that the right has been released or abandoned, and in some way lost. But the authority cited from Cruise is to the point, that, where the mortgager has held part, and the mortgagee another part, of the mortgaged premises, there is no presumption either way; the mortgage debt and the right to redeem, both remain unaffected by such a possession. Section 84 is in these terms: "Where the mortgager continues in possession, no length of time will bar the equity of redemption; and even a possession of part of the mortgaged premises will preserve the right to redeem." And section 85 cites the case of *Rakestraw* v. *Brewster*, decided by Lord King at the Rolls, and reported in Select Ch. Ca. 55, as authority for this rule.

Here was no question of a foreclosure by any proceeding instituted for that purpose. In England, we understand that a foreclosure is always by bill for that purpose, and by a decree which establishes the foreclosure. Possession by mortgagee or mortgager has nothing to do with the proceedings for foreclosure. The mortgagee, whether in or out of possession, brings his bill to foreclose. If out of possession, the decree of foreclosure does not give it to him; but, after foreclosure, he must bring his ejectment to obtain possession, though he may go on with his ejectment and his bill at the same time. In this respect, the foreclosure is wholly different from that provided by our statute, in which there can be no foreclosure without possession for a year. We cannot but see at once how little bearing the authority cited from Cruise has on the ques-

tion, whether, in England, if the different parcels of the land mortgaged are held, some by the mortgager and some by purchasers from him, the mortgagee may not, if he so elects, in his process for foreclosure, enforce his security on the parts held by the mortgager, and omit the purchasers as parties to his bill.

Then, again, the general doctrine of *Rakestraw* v. *Brewster* is denied to be law by Coventry, the learned commentator on Powell, in a note, which is cited and approved by Story in *Dexter* v. *Arnold*, 1 Sumner 118, and also denied by Lord Loughborough, in *Lake* v. *Thomas*, 3 Vesey 22. Coventry, in his note to Powell, page 385, says : "It should seem that an estate may be redeemable as to one part and irredeemable as to another through the effect of length of time, although the whole may have been originally comprised in one mortgage." He cites the remarks of Lord Loughborough in *Lake* v. *Thomas*, puts an hypothetical case, and adds in reference to what was said by Lord Loughborough : "This may be considered as deciding the hypothetical case in favor of B., and as establishing the rule to a certain extent that an estate may at one and the same period be redeemable as to one part and irredeemable as to the other part from length of time." This would seem to show that the general doctrine laid down in Cruise is not recognized for law in England ; and that, where equity requires it, there may be a bar to redemption from lapse of time as to one part of the land mortgaged and not as to the residue.

Without derogating from the habitual respect which we entertain for the court that decided the case of *Spring* v. *Haines*, we feel fully warranted in saying that the reasonings of that case have no application to one like the present under the law of this State ; and that the single authority cited for the general conclusion of the court has, at most, but a very remote bearing on a case, where there has been a foreclosure by a process instituted for that purpose ; and that the general doctrine of that authority is not recognized for law in England.

The case of *Spring* v. *Haines* was decided under the statute of Maine, and, so far as the construction of that statute is concerned, we certainly should not have the presumption to question its correctness. But, after a careful consideration of the question, we have found ourselves unable to adopt the general rule there laid down as applicable to the methods of foreclosure provided by our statute, and our conclusion is, that, on the case stated, there was a foreclosure on the part of the mortgaged premises of which the plaintiff took and held possession for one year under his process in the suit against Wilson and Gower.

At the time when the plaintiff paid to Egery, Hinkley and Smith the amount of the prior mortgage to Merrill, his foreclosure was complete on the land which he had held in his possession for one year ; and he was the absolute owner, subject to the prior mortgage only. In law and without regard to equitable considerations, the payment operated precisely as if the prior mortgage had been created by himself ; that is to say, it discharged and paid the mortgage and left him the absolute owner of the land ; and that will be the effect in this case unless equity requires the prior mortgage to be kept on foot for the purpose of en-

abling him to obtain payment of the money which he was obliged to advance to protect his subsequent estate. But the land being of sufficient value to pay both debts, both debts have been paid by his obtaining an absolute title to the land, and "no principle is better established than the principle that the mortgagee shall get no advantage out of the mortgage beyond his principal and interest, *Gordon* v. *Lewis*, 2 Sumner 155 ; and there is no equity which requires the court to give the payment any different effect from that which it has at law.

We are, therefore, of opinion, on the whole case, that the mortgage to Merrill was discharged and extinguished by payment to Egery, Hinkley and Smith ; that the plaintiff's whole claim under both mortgages has been paid by the land on which he has foreclosed. That being the case, the land held by the defendant and demanded in this suit, is discharged from the mortgages and the action cannot be maintained.

As to the ground taken by the defendant, that the plaintiff is estopped to set up his title by his conduct in allowing improvements to be made on the land without objection, the record of the mortgage referring to other deeds describing this land must be considered, we think, as constructive notice that the land was covered by the mortgage, and the defendant must be held charged with notice that such a mortgage was made covering the land. But a mortgage is no more than an incident to the debt secured ; and payment of the debt would discharge the mortgage without any deed, recorded or unrecorded. If the mortgagee were shown to have represented to the defendant that the mortgage debt had been paid and so encouraged the defendant to buy the land or build on it, and the defendant had bought or built on the strength of such a representation, we are not prepared to say that the plaintiff could afterwards set up his mortgage against the defendant. Though the defendant had notice that a mortgage had once been made, he might have a right to rely upon the mortgagee's representation that it had been discharged, and we cannot say that there might not be conduct of a mortgagee as strong for this purpose as his verbal representation. But we think it more prudent to leave the evidence, if there should be another trial, to come in and be ruled on as it may then appear, than to attempt laying down a rule in advance.

The result is, that *there must be judgment for the defendant,* unless the case should be discharged for the purpose of trying questions of fact by the jury.