Action by George N. West against Alfred B. Mills. From a judgment directing specific performance of a contract for sale of real estate, defendant appeals. Affirmed.

Argued before BARTLETT, JENKS, WOODWARD, HIRSCHBERG, and HOOKER, JJ.

Thomas J. Ritch, Jr., for appellant.
George E. Darling, for respondent.

PER CURIAM. The judgment from which this appeal is taken directs the specific performance of a contract between the plaintiff and the defendant whereby the defendant, through his agent, William H. West, agreed to sell to the plaintiff certain real estate at Stony Brook, in Suffolk county. The principal question litigated upon the trial and argued before this court was whether William H. West, who was a real estate broker, was actually authorized by the defendant to make a contract with the plaintiff for the sale of the land which he assumed to sell as agent of the defendant. To establish the agency, the plaintiff put in evidence a number of letters which passed between the broker and the defendant. In answer to an inquiry from the broker as to whether he wished to sell the land in question, the defendant wrote a letter under date of May 28, 1902, saying that he had a piece of land at Stony Brook, the location of which he specified, which he would sell "net" for $250. The learned trial judge held that it was doubtful whether this letter, if standing by itself, would warrant the conclusion that William H. West was thereby authorized to sell the premises as the agent of the defendant; but, taken in connection with the subsequent correspondence, he declared it to be plain that the defendant understood that the broker was to sell the property for him upon terms so definitely fixed that no further application to him was necessary before the contract was closed. We concur in this view as to the effect of the subsequent correspondence between the broker and the defendant. These later letters of the defendant indicate that he did intend by his first letter to confer upon the broker authority to make a sale in his behalf. The subsequent letters do not constitute the authorization, but serve to interpret the meaning and intent of the defendant in sending the letter of May 28, 1902.

We are of opinion that the conclusion reached by the Special Term was correct, and that the judgment should be affirmed.

---

(83 App. Div. 133.)

H. KRANTZ MFG. CO. v. GOULD STORAGE BATTERY CO.

(Supreme Court, Appellate Division, Second Department. May 28, 1903.)

1. SALE—CANCELLATION OF CONTRACT—ESTOPPEL.

Plaintiff received an order for an electrical switch from defendant, which order defendant claims to have afterwards canceled by telephone. After this alleged cancellation there was a conference between plaintiff's representative and defendant's electrician, at which the progress of the work was discussed, and plaintiff wrote defendant a letter plainly indicating that it was still at work on the switch, and expected to deliver

it soon, to which letter defendant made no response.  *Held*, that defendant was estopped from claiming a cancellation of the contract.

2. SAME—ACQUIESCENCE.
 Defendant ordered an electric switch from plaintiff, and afterwards requested changes causing delay.  Finally plaintiff wrote defendant that it expected to have the switch completed in 10 days, which was not done, but defendant did not insist on a termination of the contract, but permitted plaintiff to continue work on the switch.  *Held*, that plaintiff's failure to deliver the switch within the 10 days stated in the letter did not terminate the contract.

3. SAME—DELIVERY—REASONABLE TIME.
 In defendant's order for an electric switch there was no time of delivery specified, and in March (the order was made in February) defendant wrote plaintiff that there would be no charges for delay in finishing it, numerous changes having been requested.  Plaintiff continued the work under the supervision of defendant's electrician till the latter part of June, and delivered the switch in July.  *Held* that, in view of the numerous changes made, the delivery was made within a reasonable time.

4. SAME—PLACE OF DELIVERY—HARMLESS ERROR.
 Where an electric switch ordered by defendant was tendered at the office from which defendant's letters to plaintiff were sent, and no explanation was made at the trial of the printed words in the order which might suggest a different place of delivery, the trial court's finding that plaintiff's tender of delivery was sufficient will not be reversed.

Appeal from Municipal Court, Borough of Brooklyn, Second District.

Action by the H. Krantz Manufacturing Company against the Gould Storage Battery Company.  Judgment for plaintiff, and defendant appeals.  Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

John S. Davenport, for appellant.
James C. Cropsey, for respondent.

WOODWARD, J.  This is an action on contract to recover the amount alleged to be due from the defendant to the plaintiff for the manufacture of an electric switch.  The complaint alleges that on or about February 26, 1901, the plaintiff and the defendant entered into a contract whereby it was agreed that the plaintiff should manufacture and deliver to the defendant an electric switch; that subsequently, at the defendant's request, the plaintiff did certain additional work in connection with the switch; that, at like request, the plaintiff made certain modifications of the design and construction of the switch, and duly delivered it to the defendant, as required by the terms of the contract.  The answer denies the allegations of the complaint.  The contract, with its modifications, is in the form of correspondence between the parties, supplemented by verbal instructions to the plaintiff by representatives of the defendant, whose authority to bind the defendant is conceded.

Evidence was introduced by the defendant directed to these points: That the contract had been canceled and the work abandoned by the plaintiff in April, 1901, and that the switch was not delivered within the time, nor at the place, required by the terms of the con-

tract. The decision of the court before whom the case was tried without a jury was "that the contract was not canceled in April, 1901; that time was not of the essence of the contract; and that the delivery was sufficient." It is claimed by the defendant that the contract was canceled by the plaintiff in April, 1901, by telephone to the defendant's office. This is denied by the plaintiff, and the subsequent conduct of the parties does not confirm the truth of the defendant's contention. There is evidence that as late as the latter part of June, 1901, there was a conference between the plaintiff's representative and the defendant's electrician who had charge of the matter, when the subject of the progress of the work was discussed; and the defendant produced at the trial a letter received by it from the plaintiff, dated June 13, 1901, plainly indicating that the plaintiff was then still at work on the switch and expected to deliver it soon. Aside from the inconsistency suggested by the reading of the defendant's evidence of cancellation in the light of this subsequent conduct of the parties—an inconsistency which renders the defendant's testimony on the point extremely improbable—the plaintiff's evidence of the defendant's acquiescence in the continuance of the work on the switch, subsequent to the date of the alleged cancellation, is sufficient to warrant the plaintiff in invoking the rule that one cannot stand by in silence when he knows that another is acting upon an erroneous state of facts, and thereafter claim the benefit of the correct state of facts, if such claim will tend to the injury of the other person. Erie County Savings Bank v. Roop, 48 N. Y. 292, 298. Conceding the fact that the defendant deemed the contract canceled by the telephone conversation in April, its failure to make this understanding known to the plaintiff, although it had knowledge that the work was progressing, worked an estoppel, and the defendant cannot now be heard to claim the benefit of its contention. This conclusion is made more imperative by the fact that the plaintiff's letter of June 13th contained this statement: "We expect to have this work completed within ten days, when we will send the switch over to you." The defendant did not reply to this letter, nor did it communicate in any way with the plaintiff when the 10 days had expired. Although the words of the letter seem to express an expectation only, the defendant urges that a time was thereby fixed for delivery, and the plaintiff's failure to deliver the switch released it from its obligation under the contract. We cannot concur in this view. As was said in Dunn v. Steubing, 120 N. Y. 232, 237, 24 N. E. 315, 316:

"Upon the failure of the plaintiff to perform by the day fixed, the defendant might have insisted on his strict legal rights, and then put an end to the contract; but this he did not do, but permitted the plaintiff to continue the work, and for this reason he cannot now insist on the delay as a defense to an action brought to recover the price of the work."

For these reasons we think the trial court's conclusion that there was no cancellation of the contract sufficient to defeat the plaintiff's claim was correct.

There is no reason for differing with the trial court upon the proposition that the delivery was timely. The time for delivery is not specified in the contract nor in any of its modifications. On the con-

trary, the plaintiff expressly insisted, in a letter written by its president to the defendant on March 26, 1901, after the defendant had directed certain changes to be made in the construction of the switch: "We beg to say that we will under no circumstances be subject to any charge on account of delay in the manufacture of this switch." To this the defendant replied on March 29th: "You may go on and finish up this switch. There will be no charges against you on account of delay." The plaintiff thereupon proceeded with the work under the inspection of the defendant's electrician, it appears, up to the latter part of June, 1901. The switch was delivered in July, and the court has found, upon all the evidence, that this was a reasonable time, in view of the experimental character of the work, and the numerous alterations made in the original plans with the defendant's approval. We think this inference is fairly deducible from the evidence.

It is conceded that the completed switch was tendered for acceptance at the defendant's New York office, from which all the defendant's letters to the plaintiff were sent. There seems to be nowhere in the contract an intelligible provision for delivery at any other place. There surely is no such requirement explicit enough to render the trial court's failure to detect it a disregard of the evidence sufficient to call for a reversal of the judgment. The form of order sent to the plaintiff contains, in the printed part, words that might suggest a different place of delivery; but the meaning of these words is not clear, and was not explained at the trial.

After a careful examination of the evidence we are convinced that the case was properly disposed of below, and the judgment should not be disturbed. The facts of the whole transaction were exhaustively brought out at the trial. The conflict in the evidence was slight, with a fair preponderance in the plaintiff's favor. The judgment works substantial justice between the parties, and should be affirmed, with costs. All concur.